UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CORY M. POUND,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Case No. 3:21-CV-451 JD

**OPINION AND ORDER**

Plaintiff Cory Pound appeals the denial of his claim for disability insurance benefits and supplemental security income. For the following reasons, the Court will remand this matter to the Commissioner for further proceedings consistent with this opinion.

**A. Background**

Mr. Pound filed applications for disability insurance benefits and supplemental security income, alleging disability beginning November 1, 2019. His date of last insured was September 30, 2024. Mr. Pound's application was denied initially, on reconsideration, and following a hearing before an Administrative Law Judge ("ALJ"). Mr. Pound indicated his disability was caused by several mental health issues including attention-deficit hyperactivity disorder ("ADHD"), major depressive disorder, generalized anxiety, and autism spectrum disorder. (R. at 20). The ALJ found that Mr. Pound had some severe impairments but that he had not been disabled since November 1, 2019. The Appeals Council denied review of the ALJ decision, making the ALJ's decision the final determination of the Commissioner.

**B. Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The Court will affirm the Commissioner's denial of disability benefits if it is supported by substantial evidence. *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court will affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial evidence determination, the Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). The Court does, however, critically review the record to ensure that the ALJ's decision is supported by the evidence and contains an adequate discussion of the issues. *Id.* The ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection; he may not ignore an entire line of evidence that is contrary to his findings. *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must also "articulate at some minimal level his analysis of the evidence" to permit informed review. *Id.* Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, he must provide a "logical bridge" between the evidence and his conclusions. *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir. 2009).

**C. Standard for Disability**

Disability benefits are available only to individuals who are disabled under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations contain a five-step test to ascertain whether the claimant has established a disability. 20 C.F.R. §§ 404.1520, 416.920. These steps require the Court to sequentially determine:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform relevant past work; and
5. Whether the claimant can perform other work in the national economy.

*Id.; Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, the Commissioner acknowledges disability. *See* 20 C.F.R. §§ 404.1520, 416.920. However, if a listing is not met or equaled, the ALJ must assess the claimant's residual functional capacity ("RFC") between steps three and four. The RFC is then used to determine whether the claimant can perform past work under step four and whether the claimant can perform other work in society at step five. *See id*. The claimant has the burden of proof in steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national

economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

### D. Discussion

Mr. Pound raises numerous arguments in favor of remand. He generally faults the ALJ for relying on "cherry-picked" evidence, failing to provide an accurate and logical bridge between the records and her conclusions, and suffering from a "critical misunderstanding" of mental illness. (DE 16 at 8). Mr. Pound also raises several specific arguments, but the Court need only address one to resolve this appeal. That argument is that the ALJ's RFC is not supported because it relies on cherry-picked evidence, does not have a logical bridge to the evidence, and does not fully accommodate Mr. Pound's conditions. The Court agrees that the RFC is missing two crucial logical bridges and will remand this case. Mr. Martin can raise any remaining challenges on remand before the ALJ.

The Court finds that the ALJ did not establish an accurate and logical bridge between two of the limitations she incorporated into the RFC and the evidence in the record. Specifically, the ALJ did not establish a bridge between her conclusion that Mr. Pound could sustain concentration and attention for two-hour intervals and that he could complete a normal workday and work week without being off task for "more than 5 percent of the time." (R. at 19). The Court will address each in turn.

While ALJs are not required to use any "magic words" in formulating an RFC, their assessment must incorporate all the claimant's limitations supported by the medical record including limitations in concentration, persistence, or pace. *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) (citing *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019)). Additionally,

4

while the ALJ need not address every piece of evidence in the record, she must sufficiently articulate her reasoning to provide a logical bridge between the evidence and her conclusions. *Terry*, 580 F.3d at 475.

To begin, it is not clear whether the ALJ's two-hour restriction is supported by the record or fully accounts for Mr. Pound's limitations. The ALJ only offers limited analysis in support of her finding that Mr. Pound's ability to concentrate, persist or maintain pace is moderately limited. (R. at 18). The ALJ noted that Mr. Pound can play video games with an online community, that he alleged that he had a short attention span and was forgetful, but able to follow spoken instructions, and that his mental status examinations indicated he had the ability to maintain concentration and had intact thought process. (*Id.*).

It is unclear how the ALJ reached the two-hour restriction. Neither of the state agency consultants, nor seemingly any medical record, offered such an opinion. The state agency consultants, whom the ALJ considered persuasive, found that Mr. Pound had moderate limitations in his ability to perform activities within a schedule and maintain regular attendance, as well as his ability to maintain concentration, persistence, and pace in a work environment. (R. at 67–68, 79–80). In the narrative section of their reports, each opined that Mr. Pound could understand, remember, and carry out detailed, but not complex, tasks, and could attend to tasks for a sufficient period to complete tasks. (*Id.*). The state agency consultants, however, do not indicate the specific amount of time Mr. Pound could stay on task.

The only medical source to address whether Mr. Pound could maintain attention for a two-hour interval opined that he could not. (R. at 317). Dr. Sharon Boxer, in her Mental Medical Assessment Form, opined that Mr. Pound would be "seriously limited" in maintaining attention for a two-hour period due to his ADHD. (*Id.*). The ALJ ultimately found that Dr. Boxer's

5

medical opinion was not supported by the record and "not persuasive," but the ALJ did not provide any other basis for her two-hour restriction. (R. at 21).

This particular situation, of an ALJ imposing a two-hour restriction without a logical bridge, seems to be a recurring issue. It has been addressed several times by judges in this District and its sister courts, who have found that remand is necessary. *Goodman v. Saul*, 2020 WL 3619938, *9 (N.D. Ind. June 10, 2020) (collecting cases). Specifically, they found remand was necessary in situations where there is no support in the record for a two-hour restriction because it meant that the ALJ was impermissibly formulating "her own independent medical opinion regarding the effects (or lack of effects) of [the claimant's] moderate difficulties, of concentration, persistence or pace." *Id.* (quoting *Warren v. Colvin*, 2013 WL 1196603, *5 (N.D. Ill. Mar. 22, 2013)). The Seventh Circuit has long cautioned ALJs against "playing doctor" and reaching conclusions not grounded in the medical records. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

As noted by Mr. Pound, it is also unclear whether this restriction sufficiently accounts for his moderate limitation in concentration, persistence, and pace. (DE 16 at 20). As noted in *Goodman*, a conventional eight-hour workday features breaks roughly every two hours. Therefore it is unclear that an individual with moderate limitations in the ability to maintain attention and concentration would require the same frequency of breaks as a typical worker. *Goodman*, 2020 WL 3619938 at *9 (internal citations omitted).

The Commissioner's response brief does not meaningfully address this issue. The Commissioner does briefly reference the state agency consultants' opinions regarding the "complexity of instructions Mr. Pound would be asked to follow and the tasks he would be asked to concentrate on." (DE 17 at 16). Namely, by noting that, while the consultants found Mr.

Pound could handle "detailed" tasks and instructions, the ALJ further limited him to "simple" instructions and "routine" tasks. (*Id.* at 17). However, this does not meaningfully discuss Mr. Pound's ability to concentrate, persist, or maintain pace over the course of a workday. Nor does it help explain where the ALJ's two-hour restriction is derived from. This leaves the Court to conclude the ALJ did not establish the requisite logical bridge to support her finding, and a remand is required for her to conduct the requisite analysis.

For similar reasons as discussed above, the ALJ also failed to construct a logical bridge between her RFC finding regarding Mr. Pound's time off task and the evidence in the record. Specifically, it is unclear what evidence in the record supports the ALJ's conclusion that Mr. Pound could complete a workweek without being off task for more than 5% of the time. Much like the two-hour interval described above, the 5% threshold does not seem to appear in any of the medical records. The only medical opinion to assign a percentage of time off task is Dr. Boxer's and she indicates Mr. Pound would be off task more than 25% of the time. (R. at 320). The state agency consultants do not assign a percentage value, but rather indicate that Mr. Pound "can attend to tasks for a sufficient period to complete tasks." (R. at 68, 80).

This issue also goes unaddressed by the Commissioner's response brief. In the absence of other analysis by the ALJ or evidence in the record to explain the origin of this number, the Court agrees with Mr. Pound's position the ALJ has failed to construct a logical bridge and a remand is required. *See Langian v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017) (ordering a remand when the ALJ did not construct a logical bridge to her conclusion the claimant would not be off task more than 10% of the workday); *see also Harlston v. Colvin*, 2016 WL 772790, *10 (N.D. Ill. Feb 29, 2016) (remanding in part because the ALJ's RFC included a "five percent off task time" limitation which did not have a logical bridge to evidence in the record).

Accordingly, remand is necessary for the ALJ to conduct the requisite RFC analysis.

**E. Conclusion**

Accordingly, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: June 1, 2022

                                                  /s/ JON E. DEGUILIO
Chief Judge
United States District Court